## NATHANIEL FROST *versus* WILLIAM J. HAMMATT *et al.*

In an action of assault and battery brought by a mariner against the mate of the ship, who by order of the master had tied the plaintiff up to the rigging for the purpose of punishment, it was *held*, that the averments that the defendant was bound to obey the orders of the master, and that he used no unnecessary violence in tying up the plaintiff, were mixed questions of law and fact, and therefore properly put in issue to the jury.

A demurrer to a plea which is defective in being an answer to only a part of the declaration, does *not operate* as a discontinuance, but entitles the plaintiff to judgment.

Where the general issue is pleaded and likewise a plea which is an answer to only a part of the declaration, the plaintiff is not entitled to judgment by *nil dicit* for the part which is not answered by this plea.

TRESPASS. The first count alleged, that on February 14, 1830, at Whampoa, on board the Herald, an American merchant ship, the defendants (W. J. Hammatt, J. Easterbrooks, and J. M. G. Riddle,) with force and arms, beat, bruised and evil treated the plaintiff, and inflicted on him twenty-five blows with a cat-o'-nine-tails, and committed other enormities, without justifiable cause and against the peace, by which the plaintiff became lame and was otherwise injured.

The second count alleged, that on &c., the defendants did beat, bruise, strike and smite the plaintiff with many other blows, and then on deck stripped him of his clothes, and tied his hands high up to the rigging, and without provocation or justifiable cause, gave him, on his naked back and sides, twenty-five disgraceful blows with a cat-o'-nine-tails, &c.

The fourth count charged the same trespass to have been committed by Hammatt, assisted by Easterbrooks and Riddle.

Hammatt pleaded, 1. the general issue ; which was joined.

2. As to assaulting the plaintiff, stripping him of his clothing, tying him up to the rigging and giving him twenty-five blows with a cat-o'-nine-tails, as in the several counts alleged, *actio non*, because Hammatt was master and the plaintiff a mariner on board the Herald, and when Hammatt was absent, the plaintiff disobeyed the lawful orders of Easterbrooks, the first mate, and attempted to strike him with a stick, and used violent, abusive and blasphemous language, and insulted and abused him and also Riddle, the second mate, and resisted

**71**

their authority and greatly misbehaved himself, and Hammatt, by his authority as master, for the correction of the plaintiff and to prevent similar misconduct by him and the other mariners, and to preserve order and secure the safety of the lives and property on board, caused the plaintiff to be stripped and tied to the rigging in the customary mode when necessary to inflict punishment, and gave him twenty-four blows on the back with the cat, as he lawfully might do ; which is the assaulting and fastening aforesaid ; and this he is ready to verify Replication, *de injuriâ suâ*, &c. and issue joined.

Easterbrooks pleaded, 1. the general issue ; which was joined.

2. And as to the assaulting the plaintiff and taking off his shirt and tying and fastening his hands to the rigging, as in the several counts alleged, *actio non*, because Easterbrooks was the first mate of the Herald, of which ship Hammatt was master and the plaintiff a mariner, and Hammatt, by his authority as master, ordered Easterbrooks to cause the plaintiff's shirt to be removed and his hands to be tied to the rigging in such manner as is customary when it is necessary to inflict punishment on board of a ship, and Easterbrooks, in the execution of the order, and in obedience to the commands of Hammatt, to which as mate he was legally bound, without any unnecessary violence caused the plaintiff to take his shirt off and then tied his hands to the rigging in manner aforesaid, as for the cause aforesaid he lawfully might ; all of which he is ready to verify.

The plaintiff, admitting that Hammatt was master, Easterbrooks first mate and himself a mariner, and protesting that no such order was given, replies, as to the residue of the cause, *de injuriâ suâ*, and concludes to the country.

Easterbrooks demurs to this replication, and assigns for cause of demurrer, that it attempts to put in issue, to be tried by the country, mere inference and matter of law, to wit, whether the order of Hammatt given to Easterbrooks was a sufficient and legal authority for the acts by Easterbrooks stated in his plea to have been done, the same replication admitting Hammatt to have been master, Easterbrooks mate, and the plaintiff a mariner on board the ship, and the order to have

been given by Hammatt to Easterbrooks, as in his plea is set forth.

3. The third plea of Easterbrooks was similar to Hammatt's second plea. Replication, *de injuriâ suâ*, and issue joined.

The pleadings in the case of Riddle were similar to those in the case of Easterbrooks.

*E. J. Loring*, in support of the demurrer. The facts averred in the second plea of Easterbrooks are the relation of the parties and the master's order. On these facts the question arises, whether the order is a legal justification for the acts admitted in the plea. This is merely a question of law, and 'he replication, therefore, in submitting it to the jury, violates the general rule of pleading. Stephen on Pl. 215 ; 1 Chit. Pl. 587 ; *Hale* v. *Dennie*, 4 Pick. 501. The replication is not aided by the exception to the rule, which allows questions of mixed law and fact to be determined by the jury, for all the facts, from which this question results, are admitted by the replication. If other facts are included in it, they are distinct from and do not affect this question, though they may be submitted with it.

The replication is bad in substance, because it admits all the material facts averred in the plea, and leaves nothing for the traverse to operate upon. If the justification is insufficient, there should have been a demurrer. *Oystead* v. *Shed*, 12 Mass. R. 506. If the plaintiff intended to rely on the averment in the plea, "without unnecessary violence," he should have new assigned it and so have given the defendant notice of his intention ; because it is not in the declaration and is not the gist of the plea. 2 Campb. 176, note ; *Taylor* v. *Cole*, 3 T. R. 292 ; *Dye* v. *Leatherdale*, 3 Wils. 20. The absence of "unnecessary violence" is not alleged as a justificatory "cause," and therefore is not within the traverse on this plea. On the plea of *moderate castigavit*, (as in *Hannen* v. *Edes*, 15 Mass. R. 347,) it would have been in issue, for it would have been the gist of the plea.

The declaration charges the defendant with assaulting, seizing and tying up the plaintiff and giving him twenty-five blows. The plea answers a part of the declaration, and omits the

blows. For these the plaintiff should have taken judgment as by *nil dicit.* By omitting to do so and by pleading over, he has discontinued his whole action. Stephen on Pl. 232 ; 1 Wms's Saund. 28, note 3 ; *Herlakenden's case,* 4 Co. 62 , *Weeks* v. *Peach,* 1 Salk. 179 : *Market* v. *Johnson,* ibid. 180 ; *Vincent* v. *Beston,* 1 Ld. Raym. 716 ; *Peers* v. *Henriquez,* 2 Ld. Raym. 841 ; *Tippit* v. *May,* 1 Bos. & Pul. 411 ; *Green* v. *Charnock,* Cro. Eliz. 762. Discontinuance is, in the old books, synonymous with nonsuit. This appears from the stage of the pleadings at which it is found ; a discontinuance occurs when the plaintiff has ceased his suit, and the judgment then is " non pros.," that is, nonsuit. *Green* v. *Charnock,* Cro. Eliz. 762 ; Doug. (3d edit.) 169, note, and 1 Wms's Saund. 207, note 2. The plaintiff could have taken judgment as by *nil dicit* for the twenty-five blows, at the first term ; then at the trial on the general issue he could have proved the residue of his declaration and taken judgment for that residue. As the general issue, therefore, would not prevent the judgment as by *nil dicit,* it cannot cure the plaintiff's omission, and if it does not prevent the existence of the nonsuit, it cannot prevent the operation of it. The nonsuit falls on the declaration, and abating that, leaves nothing for the general issue to answer. This second plea goes to each count and answers a part and omits a part of each count ; therefore it is manifest that the plaintiff, if nonsuit as to one count, is nonsuited as to all. The case of *Sterling* v. *Sherwood,* 20 Johns. R. 204, and its citations, show that the plaintiff may take advantage of the omission of the plea, by special demurrer, but it does not decide that where the plaintiff waives the advantage altogether and pleads over, there is not a discontinuance ; and the reason given does not intimate it. A discontinuance is cured only by verdict, by *St.* 32 Hen. 8, *c.* 30 ; it is fatal on demurrer. Metcalf's Yelv. 65, note.

*Peabody, Heydock* and *Watts,* for the plaintiff, cited in support of the replication, as presenting mixed questions of law and fact, Saund. Pl. and Evid. 97, 777 ; *Hannen* v. *Edes,* 15 Mass. R. 347 ; 1 Wms's Saund. 23, note 5 ; *Grocer's Company* v. *Abp. of Canterbury,* 2 W. Bl. 776 ; *S. C.* 3 Wils. 234 ; *Allen* v. *Crofoot,* 7 Cowen, 46. The master,

in laying hands on a mariner, is *primâ facie* a trespasser, and <span style="float:right">Frost</span> the court cannot know whether the mate was justified in obey- <span style="float:right">*v.*</span> ing his order, unless the circumstances are determined by a <span style="float:right">Hammatt.</span> jury. *Thorpe* v. *Burling,* 11 Johns. R. 285 ; *Brown* v. *Howard,* 14 Johns. R. 119.

The effect of the plaintiff's pleading is not a discontinuance, but the Court will go back to the first fault ; which is in the plea. *Sterling* v. *Sherwood,* 20 Johns. R. 206 ; *Riggs* v. *Deniston,* 3 Johns. Cas. 205 ; *Bullythrope* v. *Turner,* Willes, 480 ; *Newhall* v. *Barnard,* Yelv. 225.

*Curtis* replied.

WILDE J. delivered the opinion of the Court. The plaintiff *March 28th* in this writ complains of an aggravated assault and battery committed upon him by the three defendants, on board of an American ship, at Whampoa, in China, he being a mariner and one of the crew of the ship, and the defendants being the master and the first and second mates.

He alleges that the defendants, without any justifiable cause, stripped him of his clothes, tied his hands to the rigging, and inflicted on his naked back twenty-five severe and disgraceful blows, thereby lacerating and wounding his body, and subjecting him to severe sufferings of body and mind.

The defendants severally pleaded the general issue, which is joined ; and also several pleas in justification. In two of these pleas the two mates severally justified the stripping the plaintiff and tying him to the rigging, by the order of the master, which order they aver they were bound to obey, and that the same was executed without any unnecessary violence ; but they do not undertake to justify, or to give any answer to, the residue of the trespass.

The plaintiff replies, protesting that no such order was given by the master, and traversing the residue of the pleas ; and to this replication the defendants demur.

The objection to the replication is, that it puts in issue mere questions of law. The answer is, that the averments that the defendants were bound in law to obey the order of the master, and that no unnecessary violence was used, involved mixed questions of law and fact ; and we are all clearly of this opinion. The mates had no right to obey any illegal order of the

master, and to support the first averment the defendants were bound to show some offence committed by the plaintiff deserving the punishment inflicted ; for surely no one can maintain, that the master can beat or inflict any punishment on a mariner at his own will and pleasure. So that the legality of the order essentially depended on a question of fact. And with regard to the other averment, how could it be determined whether any unnecessary violence had been used, without showing the facts and the circumstances of the case ? These averments therefore were properly traversed, and an issue tendered to the country.

But if the objections to the replication were well founded, still it is a sufficient answer to the plea, which is substantially defective in not answering the whole declaration ; and we must recur to the first fault in pleading ; so that any replication is good in answer to a plea substantially bad.

But it has been argued that there was a discontinuance, because the plaintiff did not take judgment by *nil dicit* for that part of the declaration which was not answered by the plea ; and some of the ancient authorities would seem to support this objection ; they have however been overruled by more recent decisions, on grounds which are entirely satisfactory.

It seems to be well settled, that a discontinuance is cured by verdict ; and *a fortiori* is the plaintiff entitled to judgment when he demurs to a defective plea which is not a full answer to the declaration. It seems absurd to say that a defective plea which is demurred to because it is defective, should nevertheless operate as a discontinuance of the action, and that a court of law should be called upon to sanction such an absurdity. The cases cited from the reports of Willes and of Johnson, and the reasons there given, are abundantly sufficient to show that such a position cannot be maintained. It is neither supported by any good reason, nor by authority.

But on this point also there is a double answer to the defendants' objection. The defendants having pleaded the general issue, the plaintiff could not be entitled to judgment by *nil dicit* on account of any deficiency in another plea. It is impossible that this could be allowed, when there is a full

answer to the whole declaration. It is said that if there is
no answer to one of several counts, or to a part of one count,
it will discontinue the whole action ; but the general issue is a
full answer, and until that shall be decided in favor of the
plaintiff, he cannot be entitled to judgment.

For all or any one of these reasons we think it clear that
the replications to the pleas in justification are good.